UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANKIE HARRIS, <br><br> Defendant. | Case No. 21-20552 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER
DENYING MOTION FOR RECONSIDERATION [41]**

Two Detroit police officers stopped Frankie Harris after he drove through several stop signs. The officers learned that Harris did not have his license, registration, or proof of insurance with him. The officers handcuffed Harris and searched his pockets, where they found a straw and a small baggie of white powder. As one officer asked Harris several questions related to the drugs, another searched Harris' car and found a firearm. Harris has been indicted on one count of being a felon in possession of a firearm. (ECF No. 1.)

Harris moved to suppress, among other things, the statements he made to the officers while detained. (ECF No. 28.) After an evidentiary hearing, the Court found that Harris was in custody when he was questioned by the senior officer, and that he was not given a *Miranda* warning, so his statements made in response were suppressed. (ECF No. 36.) The Government now moves for reconsideration of this order, and specifically requests that Harris' statements that he had a "thriller" (i.e.,

a firearm) in the car and that he had a prior "pistol case" not be suppressed because they were voluntarily made.

Local Rule 7.1 permits a party to move for "reconsideration . . . within 14 days after entry of the order." E.D. Mich. L.R. 7.1(h)(2). The motion may be brought if "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision[.]" E.D. Mich. L.R. 7.1(h)(2)(A). A party may also move for reconsideration if new law or new facts come to light that would change the prior decision. E.D. Mich. L.R. 7.1(h)(2)(B)–(C). This rule applies to criminal cases per Local Rule 1.1.(c).

Upon careful consideration, this Court concludes that it did not make a mistake in its prior opinion and order, which suppressed the statements Harris made while being questioned. *See* E.D. Mich. L.R. 7.1(h)(2)(A).

The Court begins by noting that the Government had the opportunity to make these same arguments in its original response to the motion to suppress. But, instead, the Government devoted one sentence in its response brief to the issue of voluntariness. (*See* ECF No. 31, PageID.130 ("And even if Harris was under arrest and the questions that officers earlier asked him about drugs were *Miranda* violations, the voluntary statement about a firearm, not made in response to interrogation, is not subject to suppression merely because there was an earlier *Miranda* violation.").) Motions for reconsideration are not to be utilized to "raise legal argumentation which could have been heard during the pendency of the previous

2

motion." *Dassault Systèmes, SA v. Childress*, 828 F. App'x 229, 237 (6th Cir. 2020). Nevertheless, the Court will consider the merits of the arguments made in the Government's motion for reconsideration.

The Government's argument seemingly proceeds in two steps. First, it argues that Harris' statements about the guns were not "in response" to officer questioning but were instead spontaneous. Second, because they are not "in response" to interrogation, and thus not made in violation of *Miranda*, the statements can only be suppressed if they are involuntary under the Due Process Clause or "fruits" of the drug-related statements that were *Miranda* violations. But the Government contends that neither of these theories hold water either—in other words, the statements do not violate the Due Process Clause and cannot be suppressed as "fruits" of prior, unconstitutional statements. The Court will address each argument in turn.

The Government argues that even if a *Miranda* violation occurs, subsequent statements that are "spontaneous" or "voluntary" are still admissible. *See Miranda v. Arizona,* 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."). Such statements also should not be excluded from trial merely because prior statements were made in violation of *Miranda. See Oregon v. Elstad*, 470 U.S. 298, 318 (1985). The Government contends that Harris' statements about the "thriller" and the other gun case were spontaneous statements that were separate from any interrogation that occurred, thus making them free from any coercive effect. The Court agrees with the Government on the law. But it disagrees that this law is applicable to Harris.

3

The Court finds that Harris' statements regarding a "thriller" and prior gun case were not spontaneous or voluntary. It is true that the majority of the officers' questions were about drugs. But some of them related to what the officers may find in Harris' car. (*See* Hearing Ex. B, Gunther body cam at 6:12 (asking if the officers were "gonna find a sack in the car?"); Hearing Ex. A, Chandler body cam at 2:00–2:05 (asking whether there was anything illegal in the car).) The Government argues that the question about finding anything illegal in the car was made for officer safety, and thus does not amount to "interrogation" under *Miranda*. But Officer Chandler, upon finding the gun in Harris' car, asked Harris, "So when I asked you earlier if you had nothing illegal in your car and you said no . . .," to which Harris responded, "no I just told [Officer Gunther] that I got a thriller in the car." (Hrg. Ex. B, Gunther body cam at 13:53–14:08.) This exchange indicates that Chandler may have been making an investigative inquiry when he asked about illegal items in the car because, of course, not every item that is "illegal" necessarily jeopardizes an officer's safety. And at that time, Harris had already been detained, distanced from the vehicle, and placed in handcuffs. Harris also indicates that it was because of Chandler's questioning that he told Gunther that he had a "thriller," which indicates that Harris may have been pressured to make these statements based on both officers' questions. This cuts against finding that Harris voluntarily made statements about the gun that were separate and apart from any interrogation.

The Court also finds that the time between Gunther's questioning and Harris' statements about the gun and the other gun case shows that the statements were

made in response to Gunther's questioning. Immediately before the two statements were made, Gunther asked "is their stuff good or is it laced with fentanyl?" (Hrg. Ex. B., Gunther body cam at 10:36.) Right after he responded to this question, Harris made the statements about the "thriller" and his other case. (*Id.* at 10:40.) In response to these statements, Gunther said, "I know. But I'm just asking. We're just talking." (*Id.* at 10:50.) And about 40 seconds later, Gunther resumed his questioning and asks again about whether the powder is laced with fentanyl. (*Id.* at 11:30.) Contrary to the Government's assertion that Harris' firearm-related statements were made when "no question was being asked of" Harris (ECF No.41, PageID.294), those statements were made right in the middle of Gunther's questioning of Harris. There was no break or pause at all between statements the Government concedes are *Miranda* violations (about the drugs) and those that it argues are not (about firearms). *Cf. U.S. v. Cole*, 315 F.3d 633, 637 (6th Cir. 2003) (admissible confession was made during booking while inadmissible confession was made at the scene); *Andersen v. Thieret*, 903 F.2d 526, 532 (7th Cir. 1990) (confession was made after an "interval of silence"). And as the Court held in its prior opinion, by engaging in conversation with Harris while he was in custody, Gunther was using "words or actions on the part of police officers that they should [know are] reasonably likely to elicit an incriminating response." *See Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). Gunther's questioning that could elicit incriminating responses occurred mere seconds before and after Harris made statements about the "thriller" and his other gun case.

5

True, the officers might have expected that their questions would have led to an incriminating response about drugs, but nothing in *Miranda* says that only the particular response that the officers expected should be suppressed. Instead, officers are prohibited from conduct that is "likely to elicit an incriminating response," period. *Innis*, 446 U.S. at 302. And though in *Innis*, the Court states that officers cannot be held accountable for the "unforeseeable results of their words or actions," it makes this statement in the context of determining what is interrogation under *Miranda* and what is not. *See* 446 U.S. at 301–302. The *Innis* Court states that since police cannot be accountable for unforeseeable results, interrogation can only be defined as "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 302. The Court has already found that the officers' questions amounted to interrogation, so the "foreseeability" premise in *Innis* does not apply here.

*The Miranda* Court does state that, "[t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Miranda*, 384 U.S. at 478. But the Court goes on to explain that this means that "[t]here is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make." *Id.* The circumstances surrounding Harris' statements stand in stark contrast to these examples of volunteered statements. And as the Sixth Circuit has stated, "[w]hen

6

police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the [government's] case in chief. Indeed, this bright-line rule applies even if the pre-warning statements are voluntary." *U.S. v. Sangineto-Miranda*, 859 F.2d 1501, 1515–1516 (6th Cir. 1988) (quoting *Oregon v. Elstad*, 470 U.S. 298, 317 (1985)). Thus, the Court still finds that these statements should be suppressed.

The Government also relies on the Supreme Court's decision in *Oregon v. Elstad*. The Government argues that, under *Elstad*, the fact that Harris' drug statements were made in violation of *Miranda* does not meant that the gun statements he made right after were also involuntary. And the Government is correct that the *Elstad* Court warned lower courts from establishing a rule that a follow-up statement can only be admissible if there is a "passage of time or a break in events." *Elstad v. Oregon*, 470 U.S. 298, 318 (1985).

But there are a few reasons *Elstad* does not persuade this Court to change its prior decision. First, *Elstad* involved a situation where the first confession, made before a *Miranda* warning was given, was suppressed, and the question became whether the second, similar confession, made after *Miranda* warnings had been given, could still be admissible. 470 U.S. at 303. That differs greatly from the circumstances here where Harris was never given *Miranda* warnings. Indeed, the *Elstad* court stated, "[t]he fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative." 470 U.S. at 318. Second, this Court is not

establishing or following a "rule" that for Harris' gun statements to be admissible, they must have been separated by time and location from his drug statements. It is instead concluding, after examining "the surrounding circumstances and the entire course of police conduct with respect to the suspect" as *Elstad* instructs, that Harris' drug-related statements were not voluntarily made. *See* 470 U.S. at 318. In fact, they were made in response to the officers' custodial interrogation of Harris and are a direct violation of *Miranda*.

The Government also cites *United States v. Cole* to argue that subsequent, spontaneous statements that were "unprovoked" by officer questioning are not in violation of *Miranda*. *See* 315 F.3d 633, 637 (6th Cir. 2003). But in *Cole*, the initial statement, made "in response to Officer Jones's direct question about the ownership of the gun," was suppressed. *Id.* at 636. And the Sixth Circuit found that after the initial question, the officers "took no actions that were likely to elicit an incriminating response," so all subsequent inculpatory statements were admissible. *Id.*

On the facts of this case, a similar finding is not warranted. As explained, Gunther took many actions that "were likely to elicit an incriminating response," both before and after Harris made the statements about the "thriller" and his "other pistol case." Further, the statements the *Cole* Court found admissible were made while the defendant was being booked and transported to the jail. Thus, they were made in a different location and some time after the suppressed statement. Here, all of Harris' statements were made in the exact same location and part of the same exchange with

Gunther as his statements about drugs. There was no meaningful pause or break in time or place. For these reasons, *Cole* does not change this Court's prior opinion.

The Government's reliance on *Andersen v. Thieret* is also unavailing. *See* 903 F.2d 526, 532 (7th Cir. 1990). There, the Court found that Andersen's statement, "I stabbed her," was admissible because it was voluntary. *Id.* at 531. Specifically, Andersen was arrested for disorderly conduct and the police asked him if he had a gun for safety reasons. *Id.* Andersen denied that he did. *Id.* Then, after an "interval of silence," Andersen made this confession. *Id.* at 528. The Seventh Circuit held that, "[t]his lapse of time and the nonresponsive character of Andersen's statement removes any possibility that Andersen was responding to police interrogation about a gun when he stated, 'I stabbed her.'" *Id.* at 532.

There are a number of differences between *Andersen* and the circumstances surrounding Harris' statements. Most notably, there was no "interval of silence" before Harris made statements related to the gun. As noted above, Gunther asked Harris a question, and Harris made the statements in the same breath that he answered Gunther's question. Further, in response to Harris' statements, Gunther said, "I'm just asking though. We're just talking." (Hrg. Ex. B, Gunther body cam at 10:49–10:53.) So the timing does not indicate that Harris' statements were spontaneous like Andersen's. Moreover, Andersen was arrested for disorderly conduct five days after he committed the crime he confessed to, and he was asked about a gun, which was not used in the crime he confessed to. So there was little relation between the crime he was arrested for, the question posed to him, and the stabbing he

9

confessed to, other than Andersen's involvement in both crimes. Here, there is a stronger relationship between the arrest, the questioning, and Harris' statements. Indeed, Harris was arrested for a crime involving his car, had already given the officers a little baggie of white powder, and was subject to questioning about drug possession, which partially focused on what would be found in his car. His statements about the gun and his gun case were related to what was immediately occurring, and (as the Court found earlier) prompted by Gunther's questioning and conversation. Gunther also asked and said much more than the one question officers asked in *Andersen*, which the Seventh Circuit held was not in violation of *Miranda* because it was for officer safety. *See also U.S. v. Woods*, 711 F.3d 737, 741 (6th Cir. 2013) (holding that defendant's incriminating statements in response to an officer asking, "what's in your pocket?" should not be suppressed because the question does not amount to interrogation). Here, the Court has already found that Gunther's questions violated *Miranda* because they amounted to interrogation. And *Andersen* provides no reason for this Court to find that statements made during that questioning should not be suppressed.

The Government also cites a number of other out-of-circuit cases in support of its spontaneity argument, but none of them are persuasive. *U.S. v. Abdulla* involved the defendant making the same confession twice "without being prompted by any question[.]" 294 F.3d 830, 832 (7th Cir. 2002). Similarly, *Medeiros v. Shimoda* involved a statement made when "the police clearly were not interrogating him at that time." 889 F.2d 819, 823 (9th Cir. 1989). And in *U.S. v. Pettigrew*, the statement

10

at issue was made "half an hour after his first statement, in a different location, and to a different officer" and "Officer Williams never interrogated [defendant.]" 468 F.3d 626 (10th Cir. 2006). Based on the Court's prior findings, cases where the police were not interrogating an individual when the challenged statement was made does not show that the Court erred in finding Harris' statements were made in response to interrogation. And the Government has not cited a case where a statement made in the middle of an interrogation was found admissible because it was not directly answering the officer's question, despite being about a related topic.

In sum, the Court finds that Harris' statements about the "thriller" and his other gun case were made in response to the officers' interrogation and were not spontaneously made.

Because it finds that the statements were made in response to interrogation in violation of *Miranda*, the Court need not address the Government's arguments regarding the "fruits" doctrine or the Due Process voluntariness standard. *See Sangineto-Miranda*, 859 F.2d at 1515–16 ("When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the [government's] case in chief."). It suffices to say that the Court does not suppress these statements because they were the "fruit" of other statements made in violation of *Miranda* or based on the "cat out of the bag" theory sometimes used when analyzing voluntariness under the Due Process Clause. *See U.S. v. Bayer*, 331 U.S. 532, 540–41 (1947). In other words, it was not Harris' statements about drugs that

11

tainted his statements about the "thriller," but Gunther's interrogation that did so. Thus, they are squarely in violation of *Miranda* and should be suppressed.

Accordingly, the motion for reconsideration (ECF No. 41) is DENIED.

SO ORDERED.

Dated: February 1, 2022

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE